UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEBORAH WALTON, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | )  No. 1:21-cv-01313-JMS-MJD |
| | ) |
| CLAYBRIDGE HOMEOWNERS ASSOCIATION, FLOCK SAFETY, TREE SERVICE UNKNOWN, STUART R. BUTTRICK, RAMIN D. KAZEMI, GEORGE P. CROYDON, RICHARD SCOTT, and GARRETT LANGLEY, | ) ) ) ) ) |
| | ) |
| *Defendants*. | ) |

## ORDER

*Pro se* Plaintiff Deborah Walton alleges that her homeowner's association, a security company, an unnamed tree service, and various individuals violated her constitutional rights and Indiana law by trespassing onto her property, cutting down a tree without permission, and installing a surveillance camera without her consent. [Filing No. 1.] Defendants Claybridge Homeowners Association ("the HOA"), Stuart R. Buttrick, Ramin D. Kazemi, George P. Corydon, and Richard Scott (collectively, "the Claybridge Defendants") have moved to dismiss Ms. Walton's claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and (b)(1) for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. [Filing No. 7.] Defendants Flock Group Inc. ("Flock")[1] and Garrett Langley (collectively, "the Flock Defendants"), have also moved to dismiss Ms. Walton's claims pursuant to Rules 12(b)(1), (b)(2), (b)(4), (b)(5), and (b)(6), arguing that Ms. Walton has failed to state a claim upon which relief can

---

[1] Defendant Flock Group Inc. has indicated that it was improperly named in this action as "Flock Safety," [Filing No. 16 at 1; Filing No. 17 at 1], and that it does business under the name "Flock Safety," [Filing No. 17 at 2].

1

be granted, has issued a defective summons against Flock, and has failed to perfect service as to both Flock Defendants, and that the Court lacks subject matter jurisdiction over the state law claims and lacks personal jurisdiction over Mr. Langley. [Filing No. 16.] These motions are both ripe for the Court's decision.

# I.
## STANDARD OF REVIEW

At the outset, although Defendants raise several grounds for dismissal of Ms. Walton's claims, the Court concludes that their arguments under Rules 12(b)(6) and 12(b)(1) are dispositive. Accordingly, the Court will only address those arguments and set forth the standards applicable to those arguments.

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Factual allegations must plausibly state an entitlement to relief "to a degree that rises

2

above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Rule 12(b)(1) "allows a party to move to dismiss a claim for lack of subject matter jurisdiction." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Jurisdiction is the "power to decide," *Boley v. Colvin*, 761 F.3d 803, 805 (7th Cir. 2014), and federal courts may only decide claims that fall within both a statutory grant of authority and the Constitution's limits on the judiciary. *In re Chicago, R.I. & P.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). Although a court deciding a Rule 12(b)(1) motion may accept the truth of the allegations in the complaint, it may look beyond the complaint's jurisdictional allegations and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. *Ciarpaglini v. Norwood*, 817 F.3d 541, 543 (7th Cir. 2016). The party asserting the existence of subject matter jurisdiction bears the burden of demonstrating by competent proof that such jurisdiction in fact exists. *See Thomas v. Gaskill*, 315 U.S. 442, 446 (1942); *see also Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015).

## II.
### STATEMENT OF FACTS

The following are the allegations in the Complaint, [Filing No. 1], which the Court accepts as true for purposes of this Order.

Ms. Walton alleges that she previously litigated a lawsuit against the HOA in state court, concerning the HOA's planting and landscaping easements on her property. [Filing No. 1 at 3.] The state court issued a judgment in that action establishing the boundaries of the HOA's easements. [Filing No. 1 at 3.]

On May 18, 2021, the Claybridge Defendants and an unidentified tree service company ("the Tree Service") entered Ms. Walton's property without permission and cut down a spruce tree. [Filing No. 1 at 3.] Two days later, the Claybridge Defendants and the Flock Defendants entered her property without permission and installed a surveillance camera. [Filing No. 1 at 3; *see also* Filing No. 1-3 at 2 (photo of the surveillance camera).][2]

In Count I, Ms. Walton alleges that the Claybridge Defendants and the Flock Defendants "are acting as a Quasi-Governmental Agency" and are "collecting information on [Ms. Walton] and sharing it with the State and Local Police Agencies." [Filing No. 1 at 3-4.] She alleges that these actions violate her rights under the Fourth, Ninth, and Fourteenth Amendments. [Filing No. 1 at 3.]

In Count II, Ms. Walton alleges that the Claybridge Defendants "have taken possession of [her] property" by installing the surveillance camera and maintaining the camera without ownership of the property. [Filing No. 1 at 4.] She asserts that this violates her rights under the Fifth Amendment. [Filing No. 1 at 4.]

In Count III, Ms. Walton alleges that the Claybridge Defendants and the Flock Defendants "have and continue to [t]respass on [her] property" and destroyed her spruce tree without her consent. [Filing No. 1 at 4.] Ms. Walton asserts that these actions violate "Indiana Code 35-43-2.b(B)."[3] [Filing No. 1 at 4.]

---

[2] Although Ms. Walton alleges in the body of her Complaint that the Claybridge Defendants, the Tree Service, and the Flock Defendants entered her property, she states in an affidavit filed along with the Complaint that she witnessed Mr. Scott, a Flock representative, and "a Tree Service hired by Richard Scott" enter her property. [*See* Filing No. 1-2 at 2-3.]

[3] Although unclear, it is likely that Ms. Walton is referring to Indiana Code § 35-43-2-2(b), which defines various types of criminal trespass.

4

In Count IV, Ms. Walton alleges that "[t]he Defendants are invading [her] privacy and the Supreme Court of Indiana concurs." [Filing No. 1 at 4 (citing *Doe v. Methodist Hosp.*, 690 N.E.2d 681 (Ind. 1997)).] Specifically, she alleges that she is entitled to enjoy the privacy of her own home, and Defendants are invading her privacy because they "have collected and [are] storing her personal information." [Filing No. 1 at 4.]

Finally, in Count V, Ms. Walton alleges that the Claybridge Defendants and the Flock Defendants violated Indiana Code 35-46-8.5-1 by installing a camera on her private property. [Filing No. 1 at 5.] She asserts that Mr. Langley "failed to review the public records of the actual [o]wners of [her] property" and "never obtained consent, from the [o]wners, prior to entering into an agreement with [the HOA]." [Filing No. 1 at 5.]

Regarding the parties to this action, Ms. Walton states that she is a natural person residing at an address in Carmel, Indiana. [Filing No. 1 at 2.] She states that the HOA is a business entity with offices in Carmel, and that Mr. Buttrick, Mr. Scott, Mr. Kazemi, and Mr. Corydon are natural persons residing at addresses in Carmel. [Filing No. 1 at 2.] Ms. Walton states that Flock is a business entity with an office in Atlanta, Georgia, and that Mr. Langley is a natural person with an office at the same address in Atlanta. [Filing No. 1 at 2.]

## III.
### DISCUSSION

### A. Failure to State a Claim – Counts I and II

#### *1. The Claybridge Defendants' Motion*

The Claybridge Defendants argue that Counts I and II must be dismissed because Ms. Walton fails to state a claim upon which relief can be granted. [Filing No. 8 at 2-4.] Specifically, they contend that Ms. Walton attempts to assert constitutional claims under 42 U.S.C. § 1983, but has not alleged that any Defendant was acting under color of law. [Filing No. 8 at 2-3.] The

5

Claybridge Defendants assert that the HOA is not a governmental entity and the named individuals are private actors. [Filing No. 8 at 3-4.] Although the Claybridge Defendants acknowledge that Ms. Walton alleges that they were "acting as a Quasi-Governmental Agency" and were collecting and sharing information with law enforcement, they argue that those allegations are vague and speculative, and Ms. Walton has failed to provide specific facts regarding how Defendants were "acting as a Quasi-Governmental Agency," which law enforcement agencies were involved, what information was shared, or how each Defendant violated the constitutional rights asserted. [Filing No. 8 at 3-4.]

In response, Ms. Walton argues that the Claybridge Defendants' "argument that [her] Complaint is raising a 42 U.S.C. § 1983 claim[] is a gross misinterpretation of the facts in the Complaint." [Filing No. 9 at 4-5.] She contends that, after discovery is conducted, she will be able to establish that her claims "are of great substance," and therefore the Court should deny the Motion to Dismiss. [Filing No. 9 at 4]

The Claybridge Defendants do not specifically address their Rule 12(b)(6) argument in their reply brief. [*See* Filing No. 10.]

### 2. *The Flock Defendants' Motion*

In support of their Motion to Dismiss, the Flock Defendants adopt and incorporate the Claybridge Defendants' arguments. [Filing No. 17 at 1 n.1.] They also contend that the Complaint is devoid of facts to support Ms. Walton's legal conclusion that any of the Defendants are quasi-governmental agencies and argue that she "makes no attempt to explain how the Flock Defendants could possibly be acting under color of law to support [her] § 1983 claims." [Filing No. 17 at 4.] The Flock Defendants also argue that they "are not governmental entities, nor are there any allegations to support the bald assertion that they are acting in that capacity." [Filing No. 17 at 4.]

6

In response, Ms. Walton contends that the Flock Defendants' "argument that [her] Complaint is raising a 42 U.S.C. § 1983 claim[] is a gross misinterpretation of the facts in the Complaint." [Filing No. 18 at 8.] She maintains that the Complaint alleges that the Defendants were acting as a quasi-governmental entity, "which is a corporation, business or agency that is regarded by national laws and regulations as being under the guidance of the government, but also separate from the government." [Filing No. 18 at 8.] Ms. Walton argues that by "charg[ing] to collect video footage" and assisting the HOA "and another organization in providing that information to Law Enforcement, this question is ripe for the U.S. Supreme Court to address." [Filing No. 18 at 8.]

In reply, the Flock Defendants reiterate that Ms. Walton does not allege facts showing that they are state actors for purposes of § 1983, and point out that the mere act of providing information to law enforcement does not provide a basis for liability under § 1983. [Filing No. 19 at 2 (citing *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)).]

   *3. Analysis*

As an initial matter, Ms. Walton's insistence that her federal constitutional claims are not brought pursuant to § 1983 is incorrect. "Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States . . . ." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (quoting 42 U.S.C. § 1983). Section 1983 "is not itself a source of substantive rights; instead it is a means for vindicating federal rights conferred elsewhere." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). In short, § 1983 is the vehicle through which Ms. Walton can assert her federal constitutional claims.

To state a claim for relief under § 1983, the plaintiff must allege facts showing that the constitutional deprivation was committed under color of state law. *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir.), *cert. denied*, 140 S. Ct. 51 (2019). "The under-color-of-state-law element means that § 1983 does not permit suits based on private conduct, 'no matter how discriminatory or wrongful.'" *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). "But a private citizen can act under color of law if there is 'evidence of a concerted effort between a state actor and that individual.'" *Spiegel*, 916 F.3d at 616 (quoting *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998)). The Seventh Circuit refers to this as "the 'conspiracy theory' of § 1983 liability." *Spiegel*, 916 F.3d at 616.

"To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of [her] constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Id.* (quoting *Fries*, 146 F.3d at 457) (second alteration original). "[M]ere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss." *Spiegel*, 916 F.3d at 616 (quoting *Fries*, 146 F.3d at 458) (alteration original). Furthermore, the Seventh Circuit has "repeatedly held that 'the mere act of furnishing information to law enforcement officers' does not constitute joint activity." *Spiegel*, 916 F.3d at 617 (citations omitted).

In Counts I and II, Ms. Walton alleges that the Defendants were "acting as a Quasi-Governmental Agency" to the extent that they were maintaining a surveillance camera on her property and "collecting information on [her] and sharing it with the State and Local Police Agencies." [Filing No. 1 at 3-4.] These allegations are plainly insufficient to satisfy the under-color-of-state-law element of a § 1983 claim.

Ms. Walton does not plead any specific facts indicating that any Defendant was working with or for any state actor or governmental entity. She does not specify what kind of information Defendants allegedly collected, and she does not even identify which law enforcement agencies allegedly received the information. She does not include any facts that would indicate that any Defendant reached an understanding with any state actor. Neither the unsupported allegation that Defendants were furnishing information to law enforcement, nor the conclusory statement that Defendants were "acting as a Quasi-Governmental Agency," is sufficient to state a claim under § 1983 for any constitutional violation. *See Spiegel*, 916 F.3d at 616; *Markou v. Equestrien Ests. Homeowners Ass'n*, 2018 WL 3022681, at *11 (N.D. Ill. June 18, 2018) (concluding that although the complaint contained "conclusory legal assertions that 'the HOA is acting under the color of law, and under the color of authority,'" "these assertions are not *facts*, and are not entitled to the presumption of truth" (emphasis original)).

In sum, Ms. Walton's Complaint does not contain facts stating a plausible claim for relief under § 1983. Accordingly, the Claybridge Defendants' Motion to Dismiss and the Flock Defendants' Motion to Dismiss are both **GRANTED** to the extent they seek dismissal of Counts I and II. Those claims are **dismissed with prejudice**. Having concluded that the Complaint does not raise a federal question, the Court must now consider whether it has jurisdiction to hear Ms. Walton's state law claims.

### B. Jurisdiction over the State Law Claims – Counts III, IV, and V

#### 1. *The Claybridge Defendants' Motion*

The Claybridge Defendants argue that once the Court dismisses Counts I and II, it must also dismiss Counts III, IV, and V because the latter counts are based purely on state law and the Court lacks subject matter jurisdiction over them. [Filing No. 8 at 4.]

In response, Ms. Walton maintains that the Court has jurisdiction because she raises federal constitutional claims, and "the fact that one of the Defendants resides in Georgia[] is another reason this case is in the Southern District of Indiana." [Filing No. 9 at 3.]

The Claybridge Defendants reply that the Court does not have diversity jurisdiction over the state law claims because the allegations in the Complaint demonstrate that complete diversity does not exist, as Ms. Walton alleges that at least five of the eight Defendants are domiciled in Indiana, the same state in which Ms. Walton is domiciled. [Filing No. 10 at 1-2.] The Claybridge Defendants further assert that Ms. Walton has not filed proof of service regarding either of the Georgia Defendants and has failed to plead or otherwise show that she seeks more than $75,000.00 in damages, exclusive of interest and costs. [Filing No. 10 at 2-3.] The Claybridge Defendants maintain that because Ms. Walton fails to state a federal claim or demonstrate the existence of diversity jurisdiction, her state law claims must be dismissed. [Filing No. 10 at 3.]

### 2. *The Flock Defendants' Motion*

The Flock Defendants adopt and incorporate the Claybridge Defendants' arguments, [Filing No. 17 at 1 n.1], and further argue that because Ms. Walton's federal claims must be dismissed for failure to state a claim, there is a rebuttable presumption against the Court exercising supplemental jurisdiction over her state law claims. [Filing No. 17 at 5.] They contend that the Court should decline to exercise jurisdiction over the state law claims because Ms. Walton can file those claims in state court and very few judicial resources have been expended to advance this lawsuit. [Filing No. 17 at 5.] Even if the Court decides to exercise jurisdiction, the Flock Defendants argue, Ms. Walton failed to state a claim upon which relief can be granted in Counts IV and V. [Filing No. 17 at 6-7.]

In response, Ms. Walton asserts that the Flock Defendants "reside in Atlanta, GA, while selling their products and services in the state of Indiana." [Filing No. 18 at 2.] She argues that the Court has federal question and diversity jurisdiction. [Filing No. 18 at 8-9.] She further asserts that "District Courts, Circuit Courts and the U.S. Supreme Court[] all accept State Claim Cases." [Filing No. 18 at 9.] Ms. Walton also argues that she has state claims for trespass and invasion of privacy under Indiana law. [Filing No. 18 at 9-10.]

The Flock Defendants reiterate their arguments in their reply brief. [Filing No. 19 at 3-4.]

    3. *Analysis*

        a. <u>Diversity Jurisdiction</u>

For the Court to exercise diversity jurisdiction, the plaintiff must be a citizen of a different state than each defendant and the amount in controversy must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). "Section 1332 requires complete diversity: no plaintiff may be a citizen of the same state as any defendant." *Altom Transp., Inc. v. Westchester Fire Ins. Co.*, 823 F.3d 416, 420 (7th Cir. 2016). For purposes of diversity jurisdiction, an individual's citizenship is his domicile, meaning "the place [he] intends to remain." *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002). Residency and citizenship are not the same, and it is the latter that matters for purposes of diversity. *Meyerson v. Harrah's East Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002). A corporation is deemed a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *see also Smoot v. Mazda Motors of Am., Inc.*, 469 F.3d 675, 676 (7th Cir. 2006).

The allegations in the Complaint are insufficient to demonstrate that this Court has diversity jurisdiction over this case. As an initial matter, Ms. Walton does not properly allege the citizenship of any Defendant, either in the Complaint or in her briefing on the Motions to Dismiss.

11

Instead, she provides the location of residency for individuals (except for Mr. Langley, for whom she provides an office address), and the location of offices of the corporate entities. It is possible that Ms. Walton intended to allege that the Flock Defendants are citizens of Georgia, but even if the Court accepts that as true, complete diversity does not exist because the Claybridge Defendants and Ms. Walton all appear to be citizens of Indiana. In addition, Ms. Walton does not allege the amount of damages she suffered, and specifically does not allege that her damages exceed the $75,000.00 jurisdictional threshold. Accordingly, the Court concludes it does not have diversity jurisdiction over this matter.

      b.  Supplemental Jurisdiction

A district court ultimately has discretion whether to exercise supplemental jurisdiction over a plaintiff's state law claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim…if…the district court has dismissed all claims over which it has original jurisdiction…."). When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quotations and citations omitted).

The Court finds that the balance of factors weigh in favor of declining to exercise supplemental jurisdiction in this case. First, as to judicial economy, the parties have not yet engaged in discovery or otherwise expended significant resources in this case. Second, the convenience factor is neutral because there is no substantial difference in litigating this case here in Indianapolis versus nearby Noblesville, Indiana, where the appropriate state court to adjudicate Ms. Walton's claims is located. As to fairness and comity, while this Court is perfectly capable of

applying Indiana law, state courts are the final arbiters of their own laws, *Montana v. Wyoming*, 563 U.S. 368, 377 n.5 (2011), and neither party would be prejudiced by requiring Ms. Walton to refile her purely state law claims in state court.

In sum, having dismissed Ms. Walton's federal claims and finding that it does not have diversity jurisdiction over her state law claims, the Court declines to exercise supplemental jurisdiction over the state law claims. Accordingly, both the Claybridge Defendants' Motion to Dismiss and the Flock Defendants' Motion to Dismiss are **GRANTED** to the extent they seek dismissal of Counts III, IV, and V. Those claims are **dismissed without prejudice**.

### C. The Unnamed Tree Service Defendant

"[A]sserting claims against an unnamed defendant is a practice generally disfavored by the Seventh Circuit, although district courts have discretion as to whether such claims may be sustained." *Kennington v. Carter*, 216 F. Supp. 2d 856, 857 (S.D. Ind. 2002) (citing cases). In some circumstances, it may be appropriate for a district court to permit discovery to allow the plaintiff to discern the identity of an unnamed defendant, rather than dismissing the claims against the unnamed defendant. *See, e.g., Duncan v. Duckworth*, 644 F.2d 653, 656 (7th Cir. 1981).

Here, the Tree Service has not been specifically identified in the Complaint, and therefore also has not been served and has not appeared in this action or moved to dismiss the claims against it. In any event, for the reasons described above, Ms. Walton has failed to allege a plausible federal claim against the Tree Service, and exercising supplemental jurisdiction over a potential state law claim against the Tree Service is not warranted. Furthermore, discovery would not be helpful or appropriate, because there are no remaining named parties from which discovery may be sought. In addition, the interests of judicial efficiency would be served by dismissing the Tree Service from this action so that Ms. Walton can pursue all of her claims in a single proceeding in state

court, should she wish to do so.  Finally, although a court generally should not dismiss a claim *sua sponte* without allowing the plaintiff an opportunity to be heard, *see*, *e.g., Shockley v. Jones*, 823 F.2d 1068, 1073 (7th Cir. 1987), Ms. Walton has indeed had the opportunity to be heard on the issues of subject matter jurisdiction and failure to state a claim in her responses to Defendants' Motions to Dismiss.  Accordingly, dismissal of the claims against the Tree Service is appropriate.  The federal claims against the Tree Services are **dismissed with prejudice**, and the state law claims against the Tree Service are **dismissed without prejudice**.

### D. Leave to Amend

Ordinarily, "[l]eave to amend should be 'freely given' if 'the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief.'" *J.P. Morgan Chase Bank, N.A. v. Drywall Serv. & Supply Co.*, 265 F.R.D. 341, 346 (N.D. Ind. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  However, "a district court may deny leave for a variety of reasons, including undue delay and futility." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) (citations omitted).  The Court may also consider the burden that allowing an amendment would have on other parties or the judicial system. *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 838 F.2d 904, 909 (7th Cir. 1988).

Ms. Walton did not request leave to amend her Complaint, either as an alternative to responding to the Motions to Dismiss or in her briefing on those motions. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, *at least upon request*, to amend the complaint to correct the problem if possible.") (emphasis added); Fed. R. Civ. P. 15, Advisory Committee Notes (stating that Rule 15(a) "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion.  A responsive amendment may avoid the need to

decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim.  It also should advance other pretrial proceedings.").  Regardless, the Court finds that providing an opportunity for Ms. Walton to amend her Complaint is not warranted in this case.  First, in light of the fact that Ms. Walton failed to articulate in her Complaint or her briefing a basis for concluding that any Defendant in this action is a state actor subject to suit under § 1983, amendment would be futile.  Second, because the cognizable state law claims asserted in this action are more appropriately pursued in state court, permitting an amendment would only serve to further delay Ms. Walton's opportunity to refile this case in the appropriate forum, should she elect to do so.  Dismissal, rather than leave to amend, is therefore the proper course of action in this case.[4]

## IV.
### CONCLUSION

Based on the foregoing, the Claybridge Defendants' Motion to Dismiss, [7], is **GRANTED**, and the Flock Defendants' Motion to Dismiss, [16], is **GRANTED**.  The Court further concludes that dismissal of the claims against Defendant "Tree Service Unknown" is appropriate.  Thus, the Court **DISMISSES** the federal claims (Counts I and II) against all parties **WITH PREJUDICE** and **DISMISSES** the state law claims (Counts III, IV, and V) against all parties **WITHOUT PREJUDICE**.  Final judgment shall issue accordingly.

Date: 10/20/2021

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[4] The Court also notes that Ms. Walton is more experienced than the average *pro se* litigant, as a review of the Court's electronic filing system reveals at least 22 cases in which Ms. Walton is a plaintiff, and in many of those matters she represented herself.

15

**Distribution via ECF only to all counsel of record**

**Distribution via U.S. Mail to:**

Deborah Walton
12878 Mayfair Lane
Carmel, IN 46032